Kent Brockelman (009627)
  Email: kbrockelman@cblawyers.com
Shelley Tolman (030945)
  Email: stolman@cblawyers.com
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
Telephone:  (602) 224-0999

*Attorneys for Defendant VXI Global Solutions LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Ayana Bufford, on behalf of herself and all those similarly situated,<br><br>Plaintiff,<br>v.<br><br>VXI Global Solutions LLC, a California limited liability company,<br><br>Defendant. | No. CV-20-00253-RCC<br><br>**MOTION TO DISMISS AND COMPEL ARBITRATION** |

### OVERVIEW

Plaintiff Ayana Bufford and opt-in Plaintiff Caroline Dugan are former hourly call-center employees in the Tucson, Arizona facility of Defendant VXI Global Solutions LLC ("VXI"). Both Ms. Bufford and Ms. Dugan (together, "Plaintiffs") signed a plainly-worded Mutual Agreement to Arbitrate Individual Claims (the "Arbitration Agreement").[1] Pursuant to the Arbitration Agreement, Plaintiffs agreed that if they had a wage dispute with VXI, they would submit that dispute on an individual basis to binding arbitration. They specifically agreed that unless otherwise provided by the Arbitration Agreement, they would

---

[1] Ms. Bufford's signed Arbitration Agreement is attached as Exhibit 1 and Ms. Dugan's as Exhibit 2.

{00508984.1 }

not initiate or prosecute any lawsuit against VXI. VXI made the same commitment to Plaintiffs.

In direct violation of the Arbitration Agreement, Plaintiffs have initiated (Ms. Bufford) or joined (Ms. Dugan) this lawsuit, which seeks recovery of allegedly unpaid wages under the Fair Labor Standards Act and Arizona's wage statute. Moreover, Ms. Bufford purports to file this action not only on behalf of herself, but on behalf of a class of VXI employees. Despite demand, Plaintiffs have refused to voluntarily dismiss this case and proceed to arbitration.

Pursuant to Rule 12(b)(1), Fed. R. Civ. P., the Federal Arbitration Act, and well-established public policy in favor of enforcing arbitration agreements, VXI asks the Court to dismiss this action and compel Ms. Bufford and Ms. Dugan to proceed with arbitration of their wage claims as each agreed to do.

## MATERIAL FACTS

### The VXI New-Hire Orientation Process

Ms. Bufford and Ms. Dugan worked for VXI as hourly call-center employees at VXI's Tucson, Arizona facility. [Complaint ("Compl."), Doc. 1, ¶ 9; Declaration of Philip Jackson ("Jackson Decl."), Ex. 3, ¶ 2] Both Ms. Bufford and Ms. Dugan started with VXI on April 15, 2019. [Jackson Decl. ¶ 3]

On their first day of work, Plaintiffs participated in VXI's standard new-hire orientation process. They met with a VXI Human Resources representative in a classroom setting. Each Plaintiff was provided with a computer, log-in credentials, and a set of new-hire documents to review and sign. The Human Resources representative went through the documents one at a time, explaining each document and answering any questions Plaintiffs might have. [*Id.* ¶¶ 5-6]

One of the documents presented was the Arbitration Agreement. [*Id.* ¶ 7] The Human Resources representative explained that under the Arbitration Agreement, disputes between the employees and VXI would be arbitrated. [*Id.*] Plaintiffs signed the Arbitration Agreement on April 15, 2019. [Exs. 1 and 2; Jackson Decl. ¶ 9]

In addition to being presented during new-hire orientation as a standalone document, the Arbitration Agreement is also an appendix to the VXI Global Solutions Employee Handbook (the "Employee Handbook"). During the new-hire orientation, the Human Resources representative showed Plaintiffs how to access the Employee Handbook on the VXI electronic dashboard, and told Plaintiffs that the Employee Handbook was always available for their review at any time during their employment. The Employee Handbook, including the Arbitration Agreement, was available to Plaintiffs via the VXI dashboard throughout their employment. [Jackson Decl. ¶¶ 7, 10]

The new-hire orientation process takes a substantial amount of time. VXI Human Resources representatives are trained to frequently ask new employees if they have questions, to answer all questions asked, and to not hurry any new employee through the document review. [*Id.* ¶¶ 12-13]

**The Arbitration Agreement**

The Arbitration Agreement's opening paragraph makes it clear that if disputes arise between VXI and its employees, such disputes will be decided by arbitration, stating that if "differences" arise "both the Company and I anticipate gaining the benefit of the speedy, impartial dispute resolution procedure offered by arbitration." [Ex. 1][2] The terms of the Arbitration Agreement begin with this:

> 1. **Claims Covered by this Agreement**. The Company and I agree to resolve, by arbitration, all individual claims or controversies, except as excluded in paragraph 2 below, involving the Company and any of its past or present . . . employees, whether or not those claims or controversies arise out of my employment with the Company or the termination of my employment ("Claims"). Subject to the exclusions in paragraph 2, the Claims covered by this Agreement include, but are not limited to, claims for wages, bonuses, commissions or any other form of compensation . . . all claims for violation of or damages under any federal, state or other governmental law, statute, ordinance, Executive Order or regulation. . . .

---

[2] All citations are to Ms. Bufford's Arbitration Agreement (Ex. 1). Ms. Dugan's Arbitration Agreement (Ex. 2) is identical.

The Arbitration Agreement then sets forth which claims are <u>not</u> subject to arbitration:

> **2. Claims not Covered by the Agreement**. This Agreement does not apply to or cover claims by me for workers' compensation benefits or unemployment compensation benefits; claims based upon an employee pension or benefit plan, the terms of which may contain an arbitration or other dispute resolution procedure . . . charges filed with any administrative or governmental agency (*e.g.*, the National Labor Relations Board or the Equal Employment Opportunity Commission); and any other claim that cannot be referred to arbitration as a matter of law.

The Arbitration Agreement contains an express delegation of authority to the arbitrator to decide all questions relating to interpretation, applicability, enforceability, or formation of the Arbitration Agreement:

> **4. Arbitration Procedures.** The Company and I agree that, except as provided in this Agreement, any arbitration shall be conducted in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ("AAA"), but excluding AAA's Supplemental Rules for Class Arbitration, before an arbitrator who is a retired judge (the "Arbitrator"). . . . The Arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement, including but not limited to any claim that all or any part of this Agreement is void or potentially void.

Section 4 goes on to make it clear that by agreeing to the Arbitration Agreement, both VXI and the employee are agreeing that they will not file or participate in any lawsuit unless expressly permitted by the Arbitration Agreement:

> Either the Company or I may bring an action in any court of competent jurisdiction to compel arbitration under and in compliance with this Agreement and to enforce an arbitration award. **Except as otherwise provided in this Agreement, the Company and I agree that neither of us shall initiate nor prosecute any lawsuit in any way related to any claim.**

[*Id.*; emphasis in original]

The Arbitration Agreement requires VXI to pay the costs of arbitration, including the arbitrator's fee. [*Id.* § 5] It does not shorten any applicable limitations period [*id.* § 3] or limit the remedies available to any party [*id.* § 4]. Finally, the Arbitration Agreement states the following immediately above the employee's signature line:

> **Mutual Agreement to Arbitrate Individual Claims**
>
> The Company and I acknowledge that we have both carefully read this Agreement, that all understandings between me and the Company relating to the subject matter of arbitration are contained in it, that our respective signatures on this Agreement mean that both the Company and I are giving up our rights to a jury trial and to a trial in a court of law, and that we have both entered into this Agreement voluntarily and not in reliance on any premises or representations other than those contained in this Agreement. The Company and I further acknowledge that we have had an opportunity to discuss this Agreement with attorneys of our choice prior to signing it and we have used that opportunity to the extent we wish to do so.

**Receipt for Employee Handbook**

As noted above, during the new-hire orientation process new employees are shown where they can find the Employee Handbook on their electronic dashboard. They are asked to sign an acknowledgment of receipt that calls further attention to the contractual nature of both parties' commitment to arbitrate disputes:

> I understand that the purpose of this Handbook is to inform me about the Company's policies and rules and that nothing contained in this handbook (<u>other than the commitment to arbitrate disputes</u>) . . . constitutes an employment contract. . . .
>
> [T]he Company reserves the right to modify, supplement, rescind or revise any provisions of this handbook, other than the employment-at-will provisions <u>and the commitment to arbitrate disputes</u>. . . .

[Exs. 4 (Bufford) and 5 (Dugan) (emphasis added); Jackson Decl. ¶ 11]

**ARGUMENT**

"A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction 'is a procedurally sufficient mechanism to enforce [an] [a]rbitration [p]rovision.'" *ROI Properties Inc. v. Burford Capital Ltd.*, No. CV-18-03300-PHX-DJH, 2019 WL 1359254, at *2 (D. Ariz. Jan. 14, 2019) (quoting *Cancer Center Assocs. for Research and Excellence, Inc. v. Philadelphia Ins. Cos.*, 2015 WL 1766938, at *3 (E.D. Cal. April 17, 2015)).

Here, the Federal Arbitration Act ("FAA") requires the enforcement of the parties' Arbitration Agreement. According to the plain language of the Agreement, the parties delegated all issues of arbitrability, including "any dispute relating to the interpretation, applicability, enforceability or formation," to the exclusive authority of the arbitrator. [Ex. 1 § 4] If this Court finds that the parties did, indeed, enter into an arbitration agreement, and that their agreement contains a valid delegation of authority to the arbitrator, the Court's inquiry ends, and the Court should grant VXI's motion and order Plaintiffs to arbitration, where the arbitrator will decide any issues related to enforceability and scope of the Arbitration Agreement.

If for any reason the Court finds that the delegation of authority is unenforceable or ineffective, then the Court should grant VXI's motion on the grounds that the parties entered into a valid agreement to arbitrate, and the agreement covers Plaintiffs' claims.

**I.   The Arbitration Agreement's Delegation Provision Requires that the Arbitrator, Not this Court, Decide all Issues Regarding the Agreement's Enforceability and Scope.**

When a party seeks to enforce an arbitration agreement delegating authority to the arbitrator to determine arbitrability issues, the district court's role is to compel the plaintiffs to proceed with arbitration when (1) the parties formed the arbitration agreement, and (2) the delegation of authority to the arbitrator is enforceable. *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (finding district court erred in failing to stay the action under the FAA when the parties agreed to delegate to the arbitrator the authority to determine arbitrability

issues); *Rodriguez-Alexander v. CACI Int'l Inc.*, No. 11-740-TUC-DCB, 2012 WL 13026919, at *2 (D. Ariz. Apr. 3, 2012) (under the delegation clause, "[t]he Court finds it must compel arbitration, including the question of arbitrability.").

### A. The Parties Formed an Agreement to Arbitrate.

The sole question here is whether the parties formed a contract. The Court should not consider issues related to whether the contract is enforceable unless the Court finds that the parties' agreement to delegate those issues to the arbitrator is ineffective.

Arizona law governs whether the parties formed a contract. *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009); *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). Under Arizona law, a valid contract is formed where there is "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Rogus v. Lords*, 166 Ariz. 600, 804 P.2d 133, 135 (Ariz. Ct. App. 1991); *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 132 P.3d 825, 828 (Ariz. 2006) (A contract is "'a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.'") (quoting Restatement (Second) of Contracts § 17(l) (1981)).

Here, VXI offered and Plaintiffs accepted the Arbitration Agreement, as evidenced by Plaintiffs' signatures. [Exs. 1 and 2] The parties' mutual promises to arbitrate all disputes other than those specifically denominated in the Arbitration Agreement constitutes specific consideration; in fact, the parties specifically agreed that this is so. [Ex. 1 § 10 ("The promises by the Company and me to arbitrate claims, rather than to litigate them, provide consideration for each other."). *See Collins v. Macy's Inc.*, CV-19-02572-PHX-GMS, 2019 WL 5188749, at *3 (D. Ariz. Oct. 15, 2019) (quoting *Circuit City Stores v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) ("An employer's promise to 'submit to arbitration and to forego the option of a judicial forum for a specified class of claims constitutes sufficient consideration.'"). The Arbitration Agreement contains clear terms and the parties' obligations can be ascertained.

The parties formed an agreement to arbitrate.

### B.    The Delegation Provision is Enforceable.

When the parties have formed an arbitration agreement, and the agreement delegates questions of arbitrability to the arbitrator, "the only remaining question is whether the particular agreement to delegate arbitrability – the Delegation Provision – is itself unconscionable." *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015). Here, the parties' delegation provision is routine and enforceable.

The FAA imposes a liberal policy in favor of arbitration and "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Chalk*, 560 F.3d at 1092. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). The FAA's requirement that courts enforce arbitration agreements according to their terms includes the agreement to have an arbitrator decide "not only the merits of a particular dispute, but also 'gateway' questions of arbitrability[,]'" such as whether the arbitration agreement is enforceable and whether the claims at issue fall within the scope of the arbitration agreement. *Henry Schein, Inc.*, 139 S. Ct. at 529.

Here, the parties expressly agreed that the "Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement . . . ." [Ex. 1 § 4] By agreeing that the arbitrator, not this Court, has the exclusive authority to resolve "any dispute relating to the interpretation, applicability, enforceability or formation" of the Arbitration Agreement, the parties clearly and unmistakably agreed to delegate to the arbitrator the authority to decide any threshold issues of arbitrability, including whether the Arbitration Agreement is enforceable and whether the Arbitration Agreement applies to Plaintiffs' claims. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66, 69 (2010) (finding that arbitration agreement giving the arbitrators "exclusive authority to resolve any dispute

relating to the interpretation, applicability, enforceability or formation of this contract" empowered the arbitrators to resolve arbitrability of an unconscionability claim); *Momot*, 652 F.3d at 988 (holding that language delegating to the arbitrator "the authority to determine 'the validity or application of any of the provisions of the arbitration clause, constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement'").

In addition, the parties agreed that the Employment Arbitration Rules of the American Arbitration Association ("AAA") govern the arbitration. [Ex. 1 § 4] This agreement further confirms the parties' agreement to delegate arbitrability authority to the arbitrator. *Brennan*, 796 F.3d at 1130 (holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability" because one of the AAA rules "provides that the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement'"); *Brumley v. Austin Centers for Exceptional Students Inc.*, No. CV-18-00662-PHX-DLR, 2019 WL 1077683, at *3 (D. Ariz. Mar. 7, 2019) ("[B]y agreeing to conduct arbitration according to the AAA rules, the parties clearly and unmistakably delegated such gateway arbitrability to the arbitrator").

The delegation provision in the Arbitration Agreement is plainly stated and clear. There are no grounds to find that it is unenforceable or ineffective.

Because the parties formed an agreement to arbitrate that includes an effective and comprehensive delegation provision, this Court must order the parties to arbitration, where the arbitrator will decide all remaining issues.

**II.   If this Court Finds that the Arbitration Agreement's Delegation Provision is Ineffective, the Court Should Find that the Parties Entered Into an Enforceable Agreement to Arbitrate that Covers Plaintiffs' Wage Claims.**

If the Court determines that it, rather than the arbitrator, should determine the enforceability of the Arbitration Agreement and whether it covers Plaintiffs' claims, the

FAA continues to require enforcement of the Arbitration Agreement, and individual arbitration of the wage claims Plaintiffs bring in this case.

      **A.**     **The Arbitration Agreement is Enforceable under the FAA and Arizona Law.**

As noted above, the FAA reflects a "liberal federal policy favoring arbitration" and requires courts to compel arbitration of any claim covered by a valid written arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *ROI Properties Inc.,* 2019 WL 1359254, at *3 (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000)). "[A]ny doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or the allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Moreover, the United States Supreme Court has held that the FAA requires courts to enforce an agreement to bring FLSA claims in arbitration on an individual basis, and not on a collective or class basis. *Epic Systems Corp v. Lewis*, 138 S. Ct. 1612, 1619 (2018); *see also Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293 (6th Cir. 2018); *Bryant v. Tristate Logistics of Arizona LLC*, No. CV-19-01552-PHX-SMB, 2020 WL 1455770, at *7 (D. Ariz. Mar. 25, 2020) (compelling plaintiffs to arbitrate their FLSA claims according to their arbitration agreements); *Longnecker v. American Exp. Co. Foldered*, 23 F. Supp. 3d 1099 (D. Ariz. 2014) (enforcing arbitration agreements requiring employees to bring FLSA claims on individual, rather than class or collective basis).

*Epic Systems* arose out of similar allegations as those advanced by Plaintiffs in this case. The plaintiffs alleged that the defendant-employer violated the FLSA by failure to pay overtime compensation. Like Plaintiffs in this case, the plaintiffs attempted to litigate the claims as a collective action under the FLSA as well as seeking to litigate as a class under state law. Like Plaintiffs in this case, the plaintiffs were parties to arbitration agreements

that required disputes to be resolved on an individual basis by binding arbitration. Relying on the FAA's liberal policy in favor of arbitration, the Supreme Court found that the parties' agreement to arbitrate FLSA claims on an individual basis was enforceable. *Epic Systems*, 138 S. Ct. at 1623-30.

The Sixth Circuit, in *Gaffers v. Kelly Services, Inc.*, also relied on the FAA's liberal policy favoring arbitration in finding the parties' agreement to arbitrate FLSA claims on an individual basis valid and enforceable. 900 F.3d 293, 297 (6th Cir. 2018). Like Plaintiffs in this case, the plaintiff in *Gaffers* was a call-center employee seeking allegedly unpaid wages. *Id.* at 295. Like Plaintiffs in this case, the plaintiff sought to assert a collective action under the FLSA despite the existence of an arbitration agreement with the employer. Relying on *Epic Systems*, the court found the arbitration agreement valid and enforceable. *Id.* at 297.

Under the FAA, the Arbitration Agreement is enforceable unless Plaintiffs establish a generally applicable contract defense, such as unconscionability. *Chalk*, 560 F.3d at 1092. Plaintiffs bear the burden of meeting the "high bar" necessary to establish that the Arbitration Agreement is unconscionable – procedurally or substantively – under Arizona law. *Pinto v. USAA Ins. Agency Inc. of Texas (FN)*, 275 F. Supp. 3d 1165, 1170 (D. Ariz. 2017) (citing *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P2d 51, 56 (Ariz. 1995)).

### 1.   Procedural Unconscionability

Procedural unconscionability refers to unfair surprise, often where the entity proposing an arbitration agreement hides the fact of the agreement or its substantive terms. It "is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Maxwell*, 907 P.2d at 57-58. "Other factors include whether the contract was separate from other paperwork, whether it used conspicuous typeface, and whether it was signed hurriedly without explanation in emergency circumstances." *Silva v. Butori Corp.*, CV-19-04904-PHX-MTL, 2020 WL 2308528, at *6 (D. Ariz. May 8, 2020).

Here, no such facts exist. The Arbitration Agreement was separately presented and explained. It was not buried or hidden in another document. There is no fine print. It is understandable. Plaintiffs were allowed time to read it and ask questions. Even if Plaintiffs read only the two sentences above the signature line, they could not have executed the Arbitration Agreement without knowing that both they and the Company were "giving up [their] rights to a jury trial and to a trial in a court of law," and that if they wanted an opportunity to discuss the agreement "with attorneys of [their] choice prior to signing," they could exercise that opportunity. [Ex. 1]

Of course, the terms of a large employer's arbitration program, and the employer's related arbitration agreements, are almost never individually negotiated. This fact is no bar to enforcement. *See Silva*, 2020 WL 2308528, at *6 (finding take-it-or-leave-it contract was not procedurally unconscionable). "There is [no] Arizona law supporting the assertion that a finding of adhesion equates to a finding of procedural unconscionability." *R & L Ltd. Investments, Inc. v. Cabot Inv. Properties, LLC*, 729 F. Supp. 2d 1110, 1115 (D. Ariz. 2010).

The Arbitration Agreement is not procedurally unconscionable.

### 2.     Substantive Unconscionability

"Substantive unconscionability requires an examination of the actual terms of the contract and the relative fairness of the obligations assumed by each party." *Longnecker*, 23 F. Supp. 3d at 1109. Here, the Arbitration Agreement is substantively fair. Plaintiffs can pursue any individual claims in arbitration that they could pursue in court. [Ex. 1 § 1] If they win those claims, they can receive any relief they could have received in court. [*Id.* § 4] No limitations period is shortened. [*Id.* § 3] The arbitration will take place in or near the city where Plaintiffs were employed. [*Id.* § 4] The arbitrator will be a retired judge. [*Id.*] AAA's Employment Arbitration Rules apply, which provide for adequate discovery for both sides. [*Id.*; AAA Employment Arbitration Rule 9] VXI will pay the fees and costs of the arbitrator. [Ex. 1 § 5]

The Arbitration Agreement is not substantively unconscionable. Plaintiffs and VXI entered into a valid agreement to arbitrate.

### B. The Arbitration Agreement Covers Plaintiffs' Claims.

Federal law governs the determination of the scope of the arbitration agreement. *Tracer*, 42 F.3d at 1294. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mastrobouno v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 n. 8 (1995). Disputes are presumed to be subject to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comm'ns Workers of Am.,* 475 U.S. 643, 650 (1986) (citation and quotation marks omitted).

In this case, Plaintiffs allege that VXI failed to pay them wages under the Fair Labor Standards Act and Arizona's wage statute. These claims fall squarely under the broad scope of the Arbitration Agreement, which requires arbitration of "claims for wages, bonuses, commissions or any other form of compensation," as well as claims brought pursuant to any federal or state statute. [Ex. 1 § 1] *See Longnecker*, 23 F. Supp. 3d at 1105-06 (FLSA claims within scope of arbitration agreements providing that the "employment related disputes subject to arbitration . . . include any claims arising under any federal, state or local statute, regulation, or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment or termination of employment").

Conversely, Plaintiffs may not arbitrate on a collective or class basis, or on any basis other than as individuals. The Arbitration Agreement is abundantly clear on this point, from the title of the document ("Mutual Agreement to Arbitrate Individual Claims") to the statement of the claims covered by the Arbitration Agreement ("all individual claims or controversies") [Ex. 1 § 1], to the express exclusion of AAA's Supplemental Rules for Class Arbitration [*id.* § 4]. Accordingly, the Court should dismiss Plaintiffs' claims and order them to proceed against VXI in individual arbitrations. *See Casement v. Soliant Health, Inc.*, No. 1:19-cv-01262-DAD-JLT, 2020 WL 206173, at *9 (E.D. Cal. Apr. 29, 2020) (dismissing class claims where putative class representative was required to arbitrate

individual claims, and arbitration agreement did not provide for class-wide arbitration); *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) (explaining that *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) "confirms that the parties here should be ordered into individual arbitration, as they did not agree to class-wide or collective arbitration").

## CONCLUSION

Each Plaintiff and VXI formed an agreement to arbitrate by entering into the Arbitration Agreement. The Arbitration Agreement contains a clear and enforceable delegation of authority to the arbitrator to make all determinations regarding arbitrability. Accordingly, the Court should dismiss this action. Plaintiffs can initiate an arbitration proceeding and make whatever arguments and bring whatever claims they wish. The arbitrator will decide whether the Arbitration Agreement is enforceable and, if it is, what claims may and may not be arbitrated.

If the Court determines that the Arbitration Agreement's delegation provision is ineffective, the Court should make the determination that the Arbitration Agreement is enforceable, that it covers wage disputes like the dispute underlying this lawsuit, and that Plaintiffs must arbitrate such disputes and related claims on an individual basis, as they agreed to do.

For all of the foregoing reasons, VXI asks the Court to dismiss this action and compel Plaintiffs to proceed in arbitration.

Respectfully submitted this 7th day of August, 2020.

**COPPERSMITH BROCKELMAN PLC**

By: s/ Kent Brockelman
    Kent Brockelman
    Shelley Tolman
    *Attorneys for Defendant VXI Global Solutions LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2020 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

s/ Kent Brockelman