**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ayana Bufford, | No. CV-20-00253-TUC-RCC |
| Plaintiff, | **ORDER** |
| v. | |
| VXI Global Solutions LLC, | |
| Defendant. | |

Pending before the Court is Defendant VXI Global Solutions, LLC's ("VXI") Motion to Dismiss and Compel Arbitration (Doc. 10) and Plaintiff Ayana Bufford's Motion for Conditional FLSA Class Certification and to Authorize Notice to Similarly Situated Persons Under 29 U.S.C. § 216(b) and for Expedited Discovery (Doc. 11). After briefing was complete, opt-in Plaintiff Kristan Grayson joined this suit. (Doc. 34.) The Court then ordered supplementary briefing as to Grayson's claims. (Docs. 35–37.) Because Plaintiff Ayana Bufford and opt-in Plaintiffs Caroline Dugan and Kristan Grayson's claims must be decided through arbitration, the Court will grant Defendant's motion. In addition, because all claims are subject to arbitration and there is no indication any putative opt-in Plaintiff could raise collective claims, the Court denies Bufford's request for collective certification and dismisses this case.

**I.   SUMMARY**

   *a. Current Suit and Motion to Dismiss and Compel Arbitration*

Plaintiff Bufford filed this lawsuit against VXI for failure to pay overtime and

incentive pay, in violation of the Fair Labor Standards Act ("FLSA") and the Arizona Wage Statute. (Doc. 1.) The suit was filed individually and as a collective action. (*Id.*) Plaintiff Bufford and opt-in Plaintiff Caroline Dugan (collectively "Plaintiffs")[1] are former call center employees at VXI. (Doc. 10-4 at 2, ¶2; Doc. 11-5 at 2, ¶2.) VXI asserts that Plaintiffs' claims are subject to arbitration (Doc. 10), but Plaintiffs believe VXI cannot compel arbitration because their arbitration agreements were unconscionable (Doc. 22).

*b. Arbitration Agreement*

After a verbal offer of employment, Plaintiffs attended a new-hire orientation. (Docs. 11-4 & 11-5 at ¶¶ 16–17.) There, Plaintiffs were provided numerous electronic documents to sign, including a Mutual Agreement to Arbitrate Individual Claims ("Arbitration Agreement" or "Agreement"). (*Id.*) Plaintiffs assert that prior to signing, they "were not given the opportunity to ask questions" or "to speak to an attorney," and were not "told anything about the employment documents . . . other than to review and electronically sign them if they wanted to start working." (Doc. 22 at 4.) However, they did not have time to thoroughly review the documents. (*Id.*) Plaintiffs also allege the documents were incomplete, including approximately forty-five pages of paperwork that were mere "snippets" of the Employee Handbook." (*Id.*)

Plaintiffs attached the electronic orientation documents to their response, including their signed Agreements. (Bufford's Agreement, Doc. 22-1 at 16–18; Dugan's Agreement, Doc. 22-2 at 16–18.) Plaintiffs do not recall reviewing or signing these Agreements. (Doc. 22 at 4.) However, Plaintiffs do not challenge the validity of their signature on the Agreement, nor do they assert the full Agreement was not provided to them.

The Agreement states the signor agrees "to resolve, by arbitration, all individual claims or controversies," including "claims for wages, bonuses, commissions or any other form of compensation." (Docs. 22-1 & 22-2 at 16.) The Agreement also delegates disputes

---

[1] Dugan filed a Notice of Consent to Opt-in to Lawsuit on July 9, 2020, stating she is similarly situated to Plaintiff Bufford. (Doc. 6.) Dugan is therefore treated as a party. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104 (9th Cir. 2018). However, because the motions do not address Plaintiff Grayson, her claim is addressed separately and is not included in the collective "Plaintiffs."

about the validity of the Agreement to an arbitrator ("Delegation Provision"). (*Id.*) The Delegation Provision provides, "The Arbitrator, and not any federal . . . court . . . , shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this agreement, including but not limited to any claim that all or any part of this Agreement is void or potentially void." (*Id.*) Below this, in bold, the Agreement notes, "**Except as otherwise provided in this Agreement, [VXI] and I agree that neither of us shall initiate nor prosecute any lawsuit in any way related to this claim.**" (*Id.* at 16–17.) On the third page — in a standalone paragraph in a larger font size and directly above Plaintiffs' signatures — the Agreement indicates: (1) the signor has carefully read the Agreement; (2) the Agreement is the complete understanding about arbitration; (3) the signor is giving up a right to "a trial in a court of law"; (4) the signor is not relying "on any premises or representations other than those contained in this Agreement"; and (5) the signor has "had an opportunity to discuss this Agreement with attorneys of [her] choice prior to signing it," and has "used that opportunity to the extent [she] wish[es] to do so." (*Id.* at 18.)

    *c. Plaintiffs' Position*

Plaintiffs argue that the Agreement was unconscionable, therefore, no enforceable contract was formed, and they cannot be forced to arbitrate. (Doc. 22 at 2–3.) Specifically, Plaintiffs contend the Agreement was unconscionable because the Employee Handbook was incomplete. (*Id.* at 6.) Second, Plaintiffs were not given the chance "to bargain for or ask questions about" the Agreement – they were simply told they must sign to start work. (*Id.* at 2). Finally, under the Agreement Plaintiffs are forced to pay for the transcription of arbitration proceedings. (*Id.*)

Regardless of unconscionability, Plaintiffs assert they may proceed in federal court because the Agreement applies only to individual claims, not collective actions. (Doc. 16 at 14–15.) Therefore, the collective FLSA and Arizona Wage claims are beyond the scope of the Agreement. (*Id.*)

Finally, even if Plaintiffs Bufford and Dugan are subject to arbitration, Plaintiffs ask

the Court to retain jurisdiction over this matter because public policy encourages putative opt-in Plaintiffs to receive notice. (*Id.* at 3.)

## II. STANDARD OF REVIEW

A defendant may compel arbitration by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *ROI Properties Inc. v. Burford Capital Ltd.*, No. CV-18-03300-PHX-DJH, 2019 WL 1359254, at *2 (D. Ariz. Jan. 14, 2019) (citing *Cancer Ctr. Assocs. for Research and Excellence, Inc. v. Phila. Ins. Cos.*, No. 1:15-CV-00084 LJO MJS, 2015 WL 1766938, at *3 (E.D. Cal. Apr. 17, 2015)). When deciding whether to compel arbitration, the district court's review is limited. The inquiry focuses on two questions: (1) "whether a valid agreement to arbitrate exists," and (2) "whether the agreement to arbitrate encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also* 9 U.S.C. § 4. If the answer is "yes" to both inquiries, arbitration must be enforced. *Chiron Corp.*, 207 F.3d at 1130.

The Federal Arbitration Act ("FAA") "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2); *see also Broemmer v. Abortion Servs. of Phx., Ltd.*, 840 P.2d 1013, 1015 (Ariz. 1992). The courts "cannot expand the [p]arties agreement to arbitrate," *Bonner v. Michigan Logistics Inc.*, 250 F. Supp. 3d 388, 394 (D. Ariz. 2017), but "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). This analysis requires that a court view the pleadings and supporting documents in the light most favorable to the non-moving party. *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 939 (D. Ariz. 2011) (applying summary judgment standard to arbitration disputes).

///

///

///

**III. DISCUSSION**

　　　　*a. Valid Arbitration Agreement*

State law determines whether the parties entered into a valid agreement to arbitrate disputes. *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009). In Arizona, "[f]or an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Pakter v. Dunne*, No. CV-18-04559-PHX-JZB, 2020 WL 3050573, at *3 (D. Ariz. June 8, 2020).

Defendant's offer of employment was accepted by Plaintiffs when they signed both the Employee Handbook and Arbitration Agreement. The parties' consideration consisted of the mutual obligation to arbitrate any employment disputes.

Plaintiffs argue they were only provided portions of the Employee Handbook, and the "failure to provide all material information inhibited their ability to review, understand, and assent to the terms." (Doc. 22 at 6.) This argument fails. Plaintiffs were given the complete terms of the Arbitration Agreement, even though some of the Employee Handbook was missing. Plaintiffs do not claim that the Agreement was incomplete, nor do they point to any missing portions of the Employee Handbook that would have changed the terms of arbitration. The Agreement clearly states "that all understandings . . . relating to the subject matter of arbitration are contained" within the Agreement. (Docs. 22-1 & 22-2 at 18.) In fact, an excerpt of the Employee Handbook included in the new hire orientation demonstrates the contractual nature of the Arbitration Agreement, in contrast to the more flexible guidelines contained in the rest of the Employee Handbook. (*See* Docs. 22-1 & 22-2 at 13 ("I understand that from time to time it may be necessary to change the policies . . . described in this handbook. Accordingly, [VXI] reserves the right to modify . . . any provisions of this handbook, *other than . . . the commitment to arbitrate disputes*." (emphasis added)). Thus, the missing portions of the Handbook have no bearing on the terms of the Agreement, and Plaintiffs had all the information they needed to assent.

In sum, the Court finds the Agreement, signed by Plaintiffs and made with

consideration of the mutual obligations of both parties to arbitrate, formed a contract to arbitrate the FLSA and Arizona wage disputes raised in this suit. The express terms of the Agreement unambiguously show the intent to arbitrate any "claims for wages, bonuses, commissions or any other form of compensation." (*See* Doc. 22-1 & 22-2 at 16.) Plaintiffs' individual FLSA and Arizona Wage Statute claims are wage disputes. The Agreement also encompasses Plaintiffs' unconscionability defenses, assigning disputes related to the enforceability of the Agreement to an arbitrator.

However, this does not resolve (1) whether the scope of the agreement extends to the collective action, or (2) whether the delegation of the enforceability of the Agreement to an arbitrator is unconscionable. The Court addresses these questions in turn.

    *b. Scope of Agreement*

        i. <u>Individual v. Collective Action</u>

Next, the Court considers whether the Arbitration Agreement encompasses the collective claims. Plaintiffs' believe they should be permitted litigate in the collective because the Agreement is limited to individual grievances. (Doc. 16 at 14-15.) They may not.

Although a court "interprets the contract by applying general state-law principles of contract interpretation," it must also give "due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" *Shivkov v. Artex Risk Sols. Inc.*, No. CV-18-04514-PHX-SMM, 2019 WL 8806260, at *3 (D. Ariz. Aug. 5, 2019), *aff'd,* 974 F.3d 1051 (9th Cir. 2020) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). An arbitration agreement "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Moreover, in Arizona the courts "adopt a construction of a contract which will harmonize all of its parts, and apparently conflicting parts must be reconciled, if possible, by any reasonable interpretation." *Roe v.*

*Austin*, 433 P.3d 569, 577 (Ariz. Ct. App. 2018), *review denied* (May 28, 2019).

The Agreement's mandated arbitration limits Plaintiffs' ability to litigate as class representatives. Not only does the Agreement explicitly limit individual disputes to arbitration, it prohibits litigation of claims "**in any way related to this claim.**" (Docs. 22-1 & 22-2 at 16–17.) "When parties intend to include a broad arbitration provision, they provide for arbitration 'arising out of or relating to' the agreement." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011). "Where an arbitration agreement is broadly worded, the factual allegations underlying the claim need only 'touch matters' covered by the arbitration agreement for the claim to be sent to arbitration." *Shivkov*, 2019 WL 8806260, at *12 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 624, n.13 (1985). Here, the factual allegations in the collective touch the issues raised in Plaintiffs' individual disputes because they both arise from VXI's unfair wage practices.

In addition, Plaintiffs cite no case law – and the Court cannot find any – supporting the conclusion that a plaintiff may litigate in the collective when she is bound to arbitrate her individual claims. The Court finds the lack of supporting case law significant: it is nonexistent because class litigation is impermissible when arbitration of individual claims is mandated. Allowing a Plaintiff to represent a collective when she cannot litigate individually is like allowing someone without standing to nevertheless proceed in federal court. Although Plaintiffs raise a federal FLSA claim, because issues related to their allegations must be arbitrated, they cannot continue litigating in federal court beyond this Court's determination of the Arbitration Agreement's validity. Therefore, it is impossible for Plaintiff Bufford or opt-in Plaintiff Dugan to represent "all others similarly situated" here. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

Thus, the Agreement reasonably prohibits litigating collective claims. Because it is susceptible to an interpretation that precludes class litigation, the Court resolves this matter

in favor of arbitration of the collective claims.

The Court finds Plaintiffs were provided the full Arbitration Agreement and assented to its terms in consideration of the mutual obligations to arbitrate. In addition, the terms of the Agreement embrace both the individual and collective claims. The Court now turns to Plaintiffs' unconscionability arguments.

**IV. UNCONSCIONABILITY**

Plaintiffs' unconscionability arguments challenge both the Arbitration Agreement as a whole and the Delegation Provision, which agrees to refer disputes concerning the validity of the Agreement to an arbitrator. The Court is not at liberty to decide the unconscionability of the Agreement as a whole; this is for an arbitrator to decide. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72–73 (2010) (finding no matter the validity of the contract, it is only the validity of the arbitration provision that is necessary for enforcement). For the reasons stated below, the Court finds the Delegation Provision is not unconscionable.

    *a. Delegation Provision*

Plaintiffs claim the Delegation Provision was both procedurally and substantively unconscionable. Plaintiffs state the Delegation provision was procedurally invalid because: (1) Plaintiffs do not recall receiving or reviewing the Arbitration Agreement; (2) they "mindlessly" signed the documents; (3) they had no opportunity to consult a lawyer or ask questions; and (4) they were forced to accept the terms of the Delegation Provision to work at VXI. (Doc. 22 at 2, 6.) Moreover, the Provision was substantively unconscionable because (5) Plaintiffs must bear the costs of transcribing arbitration proceedings. (*Id.*)

"Unconscionability is a generally applicable contract defense that may render an arbitration agreement unenforceable under the FAA and it is determined according to the laws of the state of contract formation." *Edwards v. Nutrition*, No. CV-17-02133-PHX-DGC, 2018 WL 637382, at *4 (D. Ariz. Jan. 31, 2018) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Specifically, "[p]rocedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances

of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 955 (N.D. Cal. 2015) (quoting *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013)). Various factors play into whether a contract is procedurally unconscionable, including the maturity and "business acumen" of the plaintiff, as well as the ability of the weaker party to negotiate and understand the terms of the agreement. *Dueñas v. Life Care Ctrs. of Am.*, 336 P.3d 763, 768 (Az. Ct. App. 2014). In addition, the courts may consider "whether the contract was separate from other paperwork, whether the contract used conspicuous typeface, and whether the contract was signed hurriedly and without explanation in emergency circumstances." *Id.* Unconscionability is a plaintiff's burden to prove; it is "a high bar to meet." *Coup*, 823 F. Supp. 2d at 947.

### i. No Recollection of Delegation

Plaintiffs' forgetfulness does not negate the fact they signed the Arbitration Agreements. A mere three pages long, Plaintiffs do not dispute that they scrolled through the Agreement, including the Delegation Provision, and that they electronically signed their names to it. Plaintiffs' failure to remember viewing or signing the document does not make the Delegation Provision unconscionable. *See Scott-Ortiz v. CBRE Inc.*, No. CV-20-00238-PHX-DWL, 2020 WL 6781272 (D. Ariz. Nov. 18, 2020) (finding a four-page, clearly marked arbitration clause valid even though plaintiff did not recall signing).

### ii. Mindless Consent

Likewise, Plaintiffs' failure to pay attention to what they were signing does not make the terms unfair. *See Rizzio v. Surpass Senior Living LLC*, 459 P.3d 1201, 1206 (Ariz. App. 2020) (failing to read the terms of arbitration does not constitute unconscionability, even if the terms were not explained to plaintiff); *see Coup*, 823 F. Supp. 2d at 949 ("[A] party to a contract . . . is bound by all the terms of the contract even those terms that were not bargained for, understood, or even read by the party at the time of contracting") (citations omitted); *Loewen*, 129 F. Supp. 3d at 957 (finding plaintiffs had not demonstrated a high degree of oppression when they could not recall signing a delegation clause hidden

1  within a 32-page agreement on a website, when terms were explicit and plaintiff clicked "I
2  agree"). Nor do Plaintiffs claim they could not understand the terms of the Agreement
3  because of a lack of business savvy. *See Maxwell v. Fid. Fin. Svcs. Inc.*, 907 P.2d 51, 58
4  (Ariz. 1995).

### iii. Consultation with Attorney and Inquiries

Moreover, Plaintiffs do not demonstrate unconscionability by claiming they were rushed and were not provided time to ask questions. Plaintiffs do not indicate any emergency that would have prevented them from asking questions or consulting with an attorney. The only time limitation was due to their desire to commence work immediately; this is insufficient. *See Shivkov*, 2019 WL 8806260, at *6 (rejecting unconscionability argument despite plaintiffs' claim they were rushed, because there was no indication how much time was permitted to view agreement); *see also Underwood v. Chapman Bell Rd. Imports, LLC*, No. CV-12-1835-PHX-DGC, 2013 WL 1289528, at *1 (D. Ariz. Mar. 15, 2013) (signing during a busy workday not unconscionable). Plaintiffs have not indicated they tried to ask questions or requested additional time to review the documents and were denied. *See Coup*, 823 F. Supp. 2d at 947–49 (concluding contract not unconscionable when plaintiffs provided a copy of the arbitration agreement and no evidence that if given more time they would not have signed); *Adams v. Conn Appliances Inc.*, No. CV-17-00362-PHX-DLR, 2017 WL 3315204, at *4 (D. Ariz. Aug. 3, 2017) (finding no procedural unconscionability where plaintiff did not ask for more time or refuse to sign agreement).

Moreover, "the fact that Defendants did not identify or explain the Arbitration Clause to Plaintiffs also does not render the provision unenforceable." *Shivkov*, 2019 WL 8806260, at *6. Directly above Plaintiffs' signatures, Plaintiffs indicated each had exercised their opportunity to ask questions of an attorney "to the extent [she] wish[es] to do so." (Docs. 22-1 & 22-2 at 18.) To contend otherwise is unpersuasive and unsupported.

### iv. Costs of Transcription

Plaintiffs argue that it is substantively unconscionable to require them to pay for transcription of arbitration proceedings. (Doc. 22 at 2.) This argument challenges the

- 10 -

Agreement as a whole, rather than the Delegation Provision specifically. Nevertheless, the Court will consider whether the Delegation Provision creates an undue burden on Plaintiffs because it forces them to arbitrate and – as a result – bear transcription costs.

Under state law, "[a]n arbitration agreement may be substantively unconscionable if the fees and costs to arbitrate are so excessive as to deny a potential litigant the opportunity to vindicate his or her rights. . . . The party seeking to invalidate an arbitration agreement . . . has the burden of proving that arbitration would be prohibitively expensive." *Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013).

Transcript costs are not significantly prohibitive. They are comparable to the costs associated with transcribing the matter in district court. Moreover, Plaintiff has not shown why transcription is essential to vindicate Plaintiffs' rights or presented any evidence as to what the costs would be. In addition, the AAA guidelines, under which the parties agreed to arbitrate, requires payment for transcripts from "the requesting party." *See* Employment Arbitration Rules and Mediation Procedures, Am. Arbitration Assoc. p. 18, https://adr.org/sites/default/files/EmploymentRules_Web_2.pdf. Therefore, the Agreement's provision is not inconsistent with the costs of typical AAA arbitration. Finally, even if the cost-bearing provision was unconscionable, the remedy would be to sever the violative section from the Agreement, not to find the Delegation Provision unconscionable. *See Edwards*, 2018 WL 637382, at *5 (concluding when a single provision is unconscionable, the remedy is to sever the provision) (citing *Cooper v. QC Fin. Servs., Inc.*, 503 F. Supp. 2d 1266, 1290 (D. Ariz. 2007).

The Court cannot find that the speculative costs would deter an employee from arbitrating his or her claim or cost significantly more than raising the same claim in federal court. As a result, the Court will not conclude the Agreement forecloses the vindication of Plaintiffs' rights. *See Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1056 (Ariz. Ct. App. 2005) (refusing to find fees substantively unconscionable when litigant failed to "show arbitration will put them in any worse position than litigation.")

        v. *Adhesion Contract*

1  "An adhesion contract is offered on essentially a take it or leave it basis without
2  affording the consumer a realistic opportunity to bargain and under such conditions that
3  the consumer cannot obtain the desired . . . services except by acquiescing in the form
4  contract." *Rizzio*, 459 P.3d at 1206 (citing *Duenas v. Life Care Centers of Am., Inc.*, 336
5  P.3d 763, 771 (Ct. App. 2014) (quotation marks omitted)). In Arizona, adhesion contracts
6  are generally enforceable, but must meet the "reasonable expectations of the weaker party"
7  and may not be "unduly oppressive or unconscionable." *Broemmer v. Abortion Servs.*, 840
8  P.3d 1013, 1016 (Ariz. 1992) (citation and quotation marks omitted). Mere existence of an
9  adhesion contract does not signify unconscionability. *See Longnecker v. Am. Exp. Co.*, 23
10 F. Supp. 3d 1099, 1108–09 (D. Ariz. 2014). Similarly, waiving a jury trial is insufficient
11 to show an arbitration agreement failed to meet reasonable expectations. *Shivkov*, 2019 WL
12 8806260, at *8.

13 Here, the Agreement constituted an adhesion contract because Plaintiffs had to sign
14 to start working for VXI and the Agreement gave Plaintiffs no bargaining power. This is
15 not per se unconscionable.

16 To decide unconscionability, the question is whether it was beyond Plaintiffs'
17 reasonable expectations to arbitrate a challenge to the enforceability of the Agreement.
18 "Terms of an agreement are beyond the range of reasonable expectation if one party to the
19 contract has reason to believe that the other party would not have accepted the agreement
20 if [she] had known that the agreement contained the particular term." *Underwood*, 2013
21 WL 1289528, at *2 (internal quotation marks omitted) (quoting *Harrington*, 211 Ariz.
22 241). Plaintiffs make no argument that the terms of the Delegation Provision failed to meet
23 reasonable expectations. Nor do they argue that but for the Delegation Provision they
24 would not have signed the Agreement. Furthermore, the Agreement's terms were
25 uncomplicated and included an explicit delegation of the determination of enforceability
26 to an arbitrator. Moreover, the statement that Plaintiffs were waiving a jury trial was in
27 large typeface directly above the Plaintiffs' signatures. The Court finds the Delegation
28 Provision was not beyond Plaintiffs' reasonable expectations. *But see Broemmer*, 840 P.3d

at 1016 (finding arbitrability was beyond reasonable expectations where there was no explicit waiver of trial and terms of delegation agreement were not explained).

Moreover, for the reasons stated previously, the terms of the Delegation Provision were not unconscionable. The Provision does not contradict any avowal by VXI; it explicitly gives the question of enforceability to an arbitrator. Furthermore, the terms are not unfair. Plaintiffs may still seek redress through arbitration, the costs are borne by VXI, and the financial burden is not prohibitively oppressive.

And so, the Court finds Plaintiffs entered into a valid Arbitration Agreement delegating both their class and individual claims as well as the enforceability of their Arbitration Agreements to an arbitrator.

## V. CLASS CERTIFICATION AND NOTICE

Plaintiffs Bufford and Dugan are compelled to arbitrate their claims. In addition, they may not litigate the collective action. However, two questions remain: whether (1) Plaintiff Grayson may represent the collective, and (2) putative opt-in Plaintiffs should be given notice of this action. The answer to both is no.

### a. Opt-in Plaintiff Kathleen Grayson

After the motions were fully briefed, counsel for Plaintiffs filed a Notice of Consent to Opt-in to Lawsuit for Kristan Grayson, stating Grayson is "similarly situated" to Plaintiffs.[2] (Doc. 34.) Counsel's eleventh-hour addition of an opt-in Plaintiff Grayson appeared to be a Hail Mary attempt to avoid the denial of class certification and dismissal of this action in full. Therefore, the Court requested further briefing. (Doc. 35.)

Defendant's supplementary brief stated Grayson's Agreement was identical to Plaintiffs', and that she participated in the same standard orientation. (Doc. 36; Grayson's Agreement, Doc. 36-1.) Grayson did not challenge Defendant's contention in her reply. (*See* Doc. 37.) Nor did she raise any additional defenses to contract formation. Therefore, she too is subject to arbitration and may not represent the class.

### b. Notice to Putative Opt-In Plaintiffs and Collective Certification

---

[2] Grayson is represented by the same attorney as Bufford and Dugan. (*See* Docs. 1, 6, 34.)

Defendant also attached an affidavit from VXI's Head of Human Resources, Philip Jackson, stating, "[a]ll customer service representatives at the VXI Arizona call center have participated in the same new hire orientation process as [Plaintiffs Bufford, Dugan, and Grayson]" for the period alleged in the Complaint's collective allegations. (Doc. 36-2.) Jackson added he was "not aware of any customer service representative at the Arizona call center who has not signed the Mutual Agreement to Arbitrate Individual Claims." (*Id.*)

In response, Grayson argues Jackson's affidavit is insufficient to show "*all* Customer Service Representatives at a VXI call center in Arizona . . . actually signed arbitration agreements." (Doc. 37 at 2.) Grayson claims there is a possibility that some putative opt-in Plaintiffs attended separate orientations and may not have signed the Agreement. (*Id.*) Moreover, Plaintiffs claim that it is in the public's interest to send notice to putative opt-in Plaintiffs. (Doc. 22 at 3.) Therefore, they ask the Court to send notice to putative opt-in Plaintiffs despite Bufford, Dugan, and Grayson's dismissal. (*Id.*)

Plaintiffs also cite one case to demonstrate that the Court should send notice despite their dismissal, *Judd v. Keypoint Gov't Sols., Inc.*, No. 18-CV-00327-RM-STV, 2018 WL 7142193 (D. Colo. Dec. 4, 2018). (Doc. 22 at 15.) That case, however, is nonprecedential and distinguishable. There, Orson Judd was the named plaintiff along with five opt-in plaintiffs. *Judd v. Keypoint Gov't Sol., Inc.*, No. 1:18-cv-00327-RM-STV, (Compl., Doc. 1; Consent to Sue Forms, Docs. 8, 15, 19, 20, 21) (D. Colo. July 23, 2018). However, Judd was not subject to an arbitration agreement and was permitted to proceed with litigation. *See id*, Doc. 92 at 25 ("[Defendant] maintains that [opt-in plaintiffs] are not similarly situated to Judd and other contract investigators *who are not obliged to individually arbitrate*.") (quotation marks omitted). Here, Plaintiff Bufford and opt-in Plaintiffs Dugan and Grayson are bound to arbitrate, leaving no litigants.

In addition, unlike *Judd,* in this case there is no evidence that the circumstances differ between Plaintiffs and putative opt-in Plaintiffs; the routine, mandatory employee orientation, and the signing of the Arbitration Agreement were applicable to all sales representatives. Based on the statements of *both* parties, it appears that the employee

orientation is a standard process, with identical documents provided that are reviewed under similar circumstances. (*See* Mtn. for Class Certification, Doc. 11 at 6-8; Philip Jackson Decl., Doc. 10-1 at 11-13; Bufford Decl., Doc. 11-4 at 5-6, ¶¶16-17; Dugan Decl., Doc. 11-4 at 5, ¶¶14–15; Grayson Supp'l Brief, Doc. 37.) There is no indication that any putative opt-in Plaintiff engaged in an alternative process or failed to sign the Agreement.

Next, Plaintiffs Bufford, Grayson, and Dugan also suggest that preventing notice will "take away an employee's right to join an FLSA collective action." (Doc. 22 at 15; *see* Doc. 37 at 1 (stating failure to provide notice would "extinguish the FLSA rights of the putative opt-in plaintiffs").) The Court disagrees. Nothing about this Order prevents potential plaintiffs from filing their own FLSA claims. Only current opt-in plaintiffs are bound by this Court's determinations. *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007); 29 U.S.C. § 256 (stating commencement of FLSA is effective upon filing of consent to sue).

The Court will not permit collective certification or notification and will dismiss this action because the Plaintiff and opt-in Plaintiffs are not capable of representing the class because the claims are wholly subject to arbitration. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (finding dismissal appropriate where all claims arbitrable); *Jones v. United Gas Improvement Corp.*, 383 F. Supp. 420, 435 (E.D. Pa. 1974) ("plaintiffs, who lack standing in their own right to litigate claims against the defendant unions, may not acquire standing on the ground that some member of the class they purport to represent may possess the requisite standing"); *see Green v. Fishbone Safety Sols., Ltd.*, 303 F. Supp. 3d 1086, 1100 (D. Colo. 2018) (denying conditional certification as moot because claims wholly subject to arbitration). Plaintiffs have no interest in the outcome of a collective lawsuit because their individual claims cannot be litigated. *See Hollingsworth v. Perry*, 570 U.S. 693, 705–06 (2013) (standing requires a plaintiff to have a "direct stake in the outcome" of the case).

So, despite the lenient first-stage standard for certification, based on the facts before the Court, the undersigned cannot conclude that there is *any* evidence that any putative opt-

in Plaintiff would not be subject to the same Delegation Provision as Plaintiffs Bufford, Dugan, and Grayson. To provide notice to potential opt-in litigants at this time would put the proverbial cart in front of the horse and allow Bufford, Dugan, and Grayson — who cannot litigate their claims in this Court represent the collective — to notice individuals who, based on the practices of VXI and the allegations contained in the affidavits in this case, will also be subject to arbitration. Allowing this would not serve the interests of judicial economy. *Longnecker v. Am. Exp. Co.*, No. 2:14-CV-0069-HRH, 2014 WL 4071662, at *4 (D. Ariz. Aug. 18, 2014) ("[N]either the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if [the court] were to overlook facts which generally suggest that a collective action is improper."). The Court has broad discretion when deciding whether to notify putative Plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). On balance, the Court will deny Bufford's motion to certify and provide notice.

This dispenses of this suit as the Court sees no reason to stay this matter pending arbitration and Plaintiffs have not requested the Court stay proceedings. *See Shivkov*, 2019 WL 8806260, at *13–14 ("[W]here all claims in a suit are barred by an arbitration clause, the court may grant dismissal."); *see also* 9 U.S.C. § 3. ("If any suit or proceeding be . . . referable to arbitration under an agreement in writing . . . the court in which such suit is pending . . . shall *on application of one of the parties* stay the trial of the action until such arbitration has been had . . .") (emphasis added).

///
///
///
///
///
///
///
///

Accordingly, IT IS ORDERED:

1) Defendant VXI Global Solutions, LLC's ("VXI") Motion to Dismiss and Compel Arbitration is GRANTED. (Doc. 10.)
2) Plaintiff Ayana Bufford's Motion for Conditional FLSA Class Certification and to Authorize Notice to Similarly Situated Persons Under 29 U.S.C. § 216(b) and for Expedited Discovery is DENIED. (Doc. 11.)
3) The Clerk of Court shall docket accordingly and close the case file in this matter.

Dated this 22nd day of January, 2021.

_____
Honorable Raner C. Collins
Senior United States District Judge